# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHELE RENA TUCKER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, Acting ) <br> Commissioner of the Social Security ) <br> Administration, ) <br> ) <br> Defendant. ) | Case No. CIV-17-268-STE |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for supplemental security income under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

## I. PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an

Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 19-30). The Appeals Council denied Plaintiff's request for review. (TR. 1-4). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 29, 2013, the application date/amended onset date. (TR. 21, 40). At step two, the ALJ determined Ms. Tucker had the following severe impairments: Hepatitis C, overweight, depressive disorder, anxiety disorder, and substance abuse disorder. (TR. 21). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 21).

At step four, the ALJ concluded that Ms. Tucker retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 416.967(b) meaning that she can perform no lifting or carrying more than 20 pounds occasionally and 10 pounds frequently with pushing/pulling limitations consistent with lifting and carrying limitations; can stand/walk for up to six hours in an eight-hour workday; can sit for up to eight hours in an eight-hour workday; can perform simple and routine tasks but must be a habituated work setting and object oriented setting with only superficial contact with supervisors and incidental contact with co-workers. She can have no contact with the public.

(TR. 22-23). With this RFC, the ALJ concluded that Plaintiff was unable to perform any past relevant work. (TR. 28). As a result, the ALJ made additional findings at step five. There, the ALJ presented several limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 71-72). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 72-73). The ALJ adopted the testimony of the VE and concluded that Ms. Tucker was not disabled based on her ability to perform the identified jobs. (TR. 29-30).

### III. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred in his consideration of the opinions of Plaintiff's treating psychiatrist, Linda Cummings, M.D., as well as other medical evidence. Ms. Tucker also contends that these errors affected the RFC and the ALJ's step five findings.

### IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither

reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. DR. CUMMINGS' OPINIONS

Ms. Tucker alleges that the ALJ erred in evaluating opinions from her treating psychiatrist, Dr. Linda Cummings. (ECF No. 14:6-9). Plaintiff is correct.

### A. ALJ's Duty to Assess a Treating Source's Opinion

Specific SSA regulations govern the consideration of opinions by "acceptable medical sources." *See* 20 C.F.R. §§ 416.902, 416.913(a). The Commissioner generally gives the greatest weight to the medical opinions of a "treating source," which includes a physician who has "provided [the claimant] with medical treatment or evaluation" during a current or past "ongoing treatment relationship." *Id.* §§ 416.902, 416.927(c); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

An ALJ must follow a particular analysis in evaluating a treating source's opinion. First, the ALJ has to determine, then explain, whether the opinion is entitled to controlling weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). An opinion is entitled to controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Allman v. Colvin*, 813 F.3d 1326, 1331 (10th Cir. 2016) (citation and internal quotation marks omitted). "But if the ALJ decides that the treating physician's opinion is not entitled to controlling weight, the ALJ must then

consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* (internal quotation marks omitted).

In doing so, the ALJ must assess the opinion under a series of factors which include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1331-1332 (internal quotation marks omitted); *Krausner v. Astrue,* 638 F.3d 1324, 1330 (10th Cir. 2011); 20 C.F.R § 416.927.

Ultimately, an ALJ "must give good reasons for the weight assigned to a treating physician's opinion," and "[t]he reasons must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reason for that weight." *Allman*, 813 F.3d at 1332. If the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

"In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his

5

or her own credibility judgments, speculation, or lay opinion." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (internal quotation marks omitted).

### B. Dr. Cummings' Opinions

The record contains numerous treatment notes from Dr. Cummings dated August 2006 through July 2012 and February 2013 through June 2015. (TR. 293-325, 342-365, 402, 501-505, 560-564, 584-587, 628-641). All of those notes indicate that Dr. Cummings had diagnosed Plaintiff with schizoaffective disorder; bipolar disorder; anxiety with panic attacks; social anxiety; and agoraphobia with panic attacks. (TR. 293-325, 342-365, 402, 501-505, 560-564, 584-587, 628-641). Dr. Cummings treated Plaintiff's conditions by prescribing Prozac, Seroquel, Chlorpromazine, and Alprazolam. (TR. 293-325, 342-365, 402, 501-505, 560-564, 584-587, 628-641).

On October 22, 2015, Dr. Cummings completed a "Mental Residual Functional Capacity Assessment" (MRFCA) and a "Mental Status Form." (MSF). (TR. 642-645). In the MRFCA, Dr. Cummings stated that Plaintiff was "markedly" limited in her ability to:

- Remember locations and work-like procedures,

- Perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances,

- Make simple, work-related decisions,

- Complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods,

6

- Interact appropriately with the general public, and

- Be aware of normal hazards and take appropriate precautions.

(TR. 642-643).

Dr. Cummings also opined that Plaintiff was "severely" limited in her ability to:

- The ability to understand, remember, and carry out detailed instructions,

- Accept instructions and respond appropriately to criticism from supervisors, and

- Respond appropriately to changes in the work setting.

(TR. 642-643).

In the MSF, Dr. Cummings stated that Plaintiff had been helping her mother in 2011, "caring for her" and "having to do grocery shopping," but that Plaintiff had become more seclusive over the years and "now has a friend who will go to the store for her" and Plaintiff "goes as little as possible." (TR. 644). Dr. Cummings also stated that Plaintiff:

- Had "great difficulty in keeping appointments,"

- Had a rapid deterioration in her ability to converse when stressed,

- Had "problems answering questions directly [and] tend[ed] to derail" and "if pushed, her mind [went] blank,"

- Had occasional auditory hallucinations,

- Had difficulty with memory and concentration, which the psychiatrist identified as Plaintiff's "biggest problems,"

- Did not like to leave the house or interact with others,

7

- Had "poor" reasoning,

- Was "easily frustrated by paperwork or anything with numbers,"

- Was unable to work full time and any part-time job would have to be "simple,"

- Had no ability to remember, comprehend, or carry out simple or complex instructions on an independent basis, but instead would need "repeated instructions,"

- Had no ability to respond appropriately to work pressure, supervision, and co-workers, and

- Needed no assistance in managing her benefits, if awarded.

(TR. 644-645). As to the final comment regarding assistance in managing benefits, Dr. Cummings wrote that Plaintiff had "few bills, doesn't get out to spend $. Did help her mom pay bills several years ago." (TR. 645). In support of her opinions, Dr. Cummings referenced Plaintiff's schizoaffective disorder, depression, panic disorder with agoraphobia, and generalized anxiety. (TR. 645).

### C. Error in the Evaluation of Dr. Cummings' Opinions

The ALJ accurately summarized the findings in the MRFCA and the MSF and stated:

> I carefully reviewed the Medical Source Statement of Dr. Cummings and give it little weight. Dr. Cummings reported that claimant was able to do her mother's finances but is unable to do her own now because she has very few bills and does not go out much. One reason she does not have very many bills is she has no money and lives with her boyfriend. However, she is currently handling whatever money she does have and if given benefits would have more money and presumably would be able to spend more and have more reason to go out. The thinking on this is circular. When she had the opportunity to control money she could do

so; but now that she has no money, she is incapable of controlling it. Additionally, to claim that she cannot handle her money because of poor math skills even though she controlled her mother's money with the same level of education is inconsistent. I do not find Dr. Cummings to be persuasive either on this one issue or find her reasoning in other areas any more persuasive when viewed with the record as a whole.

(TR. 28).

Plaintiff takes issue with the ALJ's treatment of Dr. Cummings opinion, arguing that the ALJ should have given Dr. Cummings' opinions "controlling weight" because they were "well-supported by medically acceptable clinical or laboratory techniques and [were] not inconsistent with other substantial evidence in the record." (ECF No. 14:6-7).[1] However, Plaintiff also argues that even if the opinions were not entitled to controlling weight, the ALJ still erred in his evaluation of Dr. Cummings' opinions.

As stated, an opinion is entitled to controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Allman v. Colvin*, 813 F.3d 1326, 1331 (10th Cir. 2016) (citation and internal quotation marks omitted). Ms. Tucker points to a plethora of evidence in support of her argument that the ALJ erred in failing to accord Dr. Cummings' opinion controlling weight. But the Court cannot re-weigh the

---

[1] Plaintiff states: "[t]he ALJ failed to engage in the required two-step inquiry [to analyze a treating sources opinion]." (ECF No. 14:7). Ms. Berryhill interprets this statement as an argument that ALJ failed to explicitly state whether Dr. Cummings opinions were entitled to controlling weight. (ECF No. 20:8). But Plaintiff clarifies that he is not attacking the ALJ's manner of inquiry into the opinion—i.e.-whether the "two steps" were followed, but rather that in the "first step," the opinion should have been given controlling weight. *See* ECF No. 14:6 ("[The ALJ] refused to give proper weight to the opinions of Linda Cummings, M.D.. . . Dr. Cummings mental RFC and MSF should have been given controlling weight.").

9

evidence to reach a different conclusion. That duty was left to the ALJ in the first instance. *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). (noting that while the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency.").

However, in the absence of controlling weight, the ALJ was still required to analyze Dr. Cummings' opinions and "give good reasons for the weight assigned" the opinions which "must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reason for that weight." *Allman*, 813 F.3d at 1332. If the ALJ rejected Dr. Cummings' opinions completely, he must have given "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

Although the ALJ stated that he gave Dr. Cummings' opinions "little weight," it is clear from his discussion that the ALJ rejected the entirety of the psychiatrist's opinions. In doing so, the ALJ made one statement regarding why he did not believe Dr. Cummings' opinion regarding Plaintiff's ability to handle her finances and another statement which effectively rejected the remainder of Dr. Cummings' opinions. (TR. 28). The first rationale lacks substantial evidence and erroneous as a matter of law and the second rationale is legally deficient.

### The ALJ's Rejection of Dr. Cummings' Opinion
### Regarding Plaintiff's Ability to Control her Finances

Dr. Cummings stated that Plaintiff would not need any assistance in managing her disability benefits, if awarded. (TR. 645). In support, Dr. Cummings stated that Plaintiff had "few bills" and "[did] not get out to spend $" and that Plaintiff had helped her mother pay bills in the past. (TR. 645).

The ALJ rejected Dr. Cummings' opinion on this issue, but the rejection was premised on a misinterpretation of what Dr. Cummings had actually stated, as well as improper presumptions which lacked evidentiary support. Although Dr. Cummings stated that Plaintiff would need no assistance in managing benefits, if awarded, the ALJ stated that Dr. Cummings had deemed Plaintiff incapable of managing her money. *See* TR. 28 ("Dr. Cummings reported that claimant was able to do her mother's finances but is unable to do her own now because she has very few bills and does not go out much."). Not only is the ALJ's summary of Dr. Cummings' opinion incorrect, the ALJ's rationales in support of rejecting the misstated opinion are improper.

As stated, an ALJ "may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (internal quotation marks omitted). However, in this case it appears that the ALJ did just that.

Not only did the ALJ inaccurately report Dr. Cummings' opinion, he engaged in improper speculation to discount the opinion. In support of rejecting this opinion, the ALJ stated: "one reason [Plaintiff] does not have very many bills is that she has no money and lives with her boyfriend." (TR. 28). This finding was improper, as it has no basis in fact and presumes Ms. Tucker's finances are dependent on her living status.

Next, the ALJ stated that if Ms. Tucker was given benefits, she "would have more money and presumably would be able to spend more and have more reason to go out." (TR. 28). Again, the ALJ's conclusion has no basis in fact, and is based solely on what appears to be a personal opinion regarding how the ALJ *presumes* Ms. Tucker would act if she had more money. Not only is this presumption legally improper, *see supra*, it ignores Plaintiff's diagnosis of agoraphobia with panic attacks. With such diagnosis, it is possible Plaintiff would have no more desire to "go out" even if she had more money. Finally, the ALJ stated: "to claim that [Plaintiff cannot handle her money because of poor math skills even though she controlled her mother's money with the same level of education is inconsistent." (TR. 28). The Court is perplexed regarding this statement. Although Dr. Cummings stated that plaintiff got "very frustrated by paperwork or anything with numbers" this statement was made in response to an inquiry regarding Ms. Tucker's "orientation, stress to be avoided, ability to think, reason, and respond." (TR. 644). Not only was Dr. Cummings' statement not related to Plaintiffs ability to handle finances, Dr. Cummings simply did not state that Plaintiff exhibited "poor math skills."

In sum, the ALJ improperly rejected Dr. Cummings' opinion regarding Plaintiff's ability to handle finances because he misinterpreted the actual opinion and presumed facts not in evidence to support the rejection. Accordingly, the Court concludes that this rationale both lacks substantial evidence and is legally improper.

**The ALJ's Rejection of Dr. Cummings' Remaining Opinions**

In rejecting Dr. Cummings' opinions, the ALJ stated he "[did] not find Dr. Cummings to be persuasive either on this one issue [concerning finances] or find her reasoning in other areas any more persuasive when viewed with the record as a whole." (TR. 28). In essence, the ALJ rejected the remainder of Dr. Cummings' opinions because he did not find them to be supported by "the record as a whole." This type of conclusory rejection has repeatedly been held improper under Tenth Circuit law. See *Allman v. Colvin*, 813 F.3d at 1332 ("[t]he reasons must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reason for that weight."); *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004) (noting that the ALJ's rejection of a doctor's opinion as "inconsistent with the overall case record," was insufficient because the ALJ did not "specifically highlight those portions of the record with which [the physician's] opinion was allegedly inconsistent"). Because the ALJ failed to specify the particular evidence which he believed did not support Dr. Cummings' opinions in "other areas," reversal is warranted.

13

## VI. OTHER EVIDENCE

Next, Plaintiff argues that the ALJ "failed to weigh any of the other opinions in the record." (ECF No. 14:9). Specifically, Plaintiff points to the following evidence concerning physical impairments:

- Arthropathy in her hands and feet,
- Lumbosacral spondylosis,
- Decreased range of motion in the lumbar spine,
- Lumbar spine spurs and fracture,
- Pain in the left leg,
- Mild joint effusion in the left knee suprapatellar bursa,
- Right leg edema,
- Right knee soft tissue swelling,
- Differences in calf measurements,
- Urinary incontinence,
- Gastroesophageal reflux disease,
- Head and facial trauma,
- Malaise and fatigue, and
- Insomnia

(ECF No. 14:10-11). Plaintiff also argues the ALJ failed to properly weigh evidence related to mental impairments involving:

- Bipolar disorder with visual and auditory hallucinations and suicidal ideation,

- Rule out psychotic disorder NOS,

- Major depressive disorder,

- Schizoaffective disorder,

- Alcohol abuse, in remission,

- Rule out borderline intellectual functioning,

- Agoraphobia with panic disorder,

- Anxiety,

- Phobias, and

- Personality disorder.

(ECF No. 14:11).

In the decision, the ALJ stated:

- Ms. Tucker suffered from "severe" disorders involving depression, anxiety, and substance abuse,

- Plaintiff's nonsevere impairments included: carpal tunnel syndrome, lumbosacral degenerative disc disease, personality disorder, schizophrenia, conditions involving both knees, and

- Medical evidence showed no deep vein thrombosis.

(TR. 21). Additionally, the ALJ discussed:

- Plaintiff's facial trauma,

- Plaintiff's fatigue,

- Diagnoses from consultative examiner Sidney Williams of "bipolar disorder with visual and auditory hallucinations and suicidal ideation and agoraphobia with panic disorder," and

- Diagnoses from consultative examiner Robert Schlottmann which ruled out borderline intellectual functioning and psychotic disorder.

(TR. 25-27).

From the decision, it is evident that the ALJ considered the evidence cited by Ms. Tucker. Although Plaintiff argues that the ALJ failed to expressly weigh this evidence, Ms. Tucker does not state how she believes the evidence would have affected the RFC. In addition, Plaintiff does not identify any inconsistencies either among the opinions or between the opinions and the RFC. Under such circumstances, the Tenth Circuit Court of Appeals has held that failure to expressly weigh an opinion which the ALJ has clearly considered is harmless. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1165-1167 (10th Cir. 2012). Additionally, when none of the opinions "offer[] an assessment of the effect of [Plaintiff's] . . . limitations on her ability to work[,]" any error in the ALJ's failure to expressly weigh the opinion is harmless. *Id.* at 1164.

## VII. PLAINTIFF'S REMAINING ALLEGATIONS

Finally, Plaintiff argues that "[t]he ALJ's errors in considering and evaluating the medical evidence fatally flawed his findings at steps 4 and 5, so the hypothetical questions and the RFC are not supported by the required substantial evidence." (ECF No. 14:12-14). But the Court will not address these allegations because "they may be affected by the ALJ's treatment of this case on remand" following the reconsideration

of Dr. Cummings' opinions. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision for further administrative development.

ENTERED on December 28, 2017.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE